**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **MEREDITH F. SOLOMON,** ) | Case No. 1:09 CV 3 |
| ) | |
| Plaintiff, ) | Judge Dan Aaron Polster |
| ) | |
| vs. ) | **MEMORANDUM OF OPINION** |
| ) | **AND ORDER** |
| **MEDICAL MUTUAL OF OHIO,** ) | |
| ) | |
| Defendant. ) | |

Before the Court are the following post-judgment motions:

•Defendant, Medical Mutual of Ohio's, Motion for Attorneys' Fees and Costs (**ECF No. 23**);

•Plaintiff's Motion to File Brief Instanter (**ECF No. 24**); and

•Plaintiff's Motion to Vacate Judgment (**ECF No. 25**).

For the reasons to follow, the Court **DENIES** each of the pending motions.

**I.**

On December 5, 2008, Plaintiff Meredith F. Solomon filed this case in state court. *ECF No. 1-2* ("Compl."). In the Complaint, Solomon alleged that she was pre-certified by Defendant Medical Mutual of Ohio ("MMO") for admission to a 30-day drug treatment program at The Hanley Center in Florida, and that she entered that program on January 25, 2007. *Compl. ¶¶ 4-8*. Solomon asserted that, on the fifth day of her stay, MMO contacted her and informed her that her claim was denied. *Id. ¶ 9*. After Solomon completed her program, she filed this case

in state court against MMO, alleging state-law claims for breach of contract, declaratory judgment, and lack of good faith. Solomon sought $38,696 (the total bills of $42,806 less the $4,110 paid by MMO) plus additional amounts for unpaid bills discovered after the filing of the complaint, punitive damages, interest, costs and attorney fees as allowed by law. *Id. ¶¶ 25, 32*.

On January 2, 2009, MMO removed the complaint to the district court. *ECF No. 1* ("Notice"). MMO asserted that the court had federal question jurisdiction over the complaint because Solomon had a medical insurance plan sponsored by her employer, Precision Printing Company, Inc.; her plan constituted an employee welfare benefit plan under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*. ("ERISA"); and the federal ERISA statute preempted her state-law claims because they were claims by a plan participant to recover benefits allegedly due to her under the terms of her plan. *Notice ¶¶ 4-5*.

On the same day MMO removed the case, it filed a Motion to Dismiss seeking dismissal of all claims on the basis that they were preempted by ERISA. *ECF No. 3*. Solomon filed an opposition brief acknowledging that she was making a claim for insurance benefits under a group health insurance plan provided to her by her employer, and that she was limited to pursuing relief under ERISA. *ECF No. 5,* at 1. She argued, however, that under general rules of pleading, the complaint was sufficient to state a cause of action under ERISA and the Court could treat her claims as such. *Id*. She asked, in the alternative, that the Court allow her to file an amended complaint that specifically asserted a cause of action for the recovery of benefits under ERISA. Based on Solomon's acknowledgment, the Court denied the Motion to Dismiss and directed Solomon to file an amended complaint that expressly asserted an ERISA claim. Solomon did so on January 12, 2009. *ECF No. 7*.

The Court subsequently held several teleconferences with counsel of record in an attempt to settle the case. *See non-document minutes entries dated 1-30-09, 2-12-09, 3-5-09*. On March 26, 2009, however, the Court held a teleconference with counsel during which counsel agreed that the case could be resolved on cross-motions for summary judgment based on certain factual stipulations (i.e., the Hanley Center is not a hospital, and Solomon did not receive advance approval for her stay). *See ECF No. 9*. The Court directed counsel to confer and file stipulations upon which they would rely, and set forth a schedule for briefing the summary judgment motions. *Id*. When the Court reviewed the summary judgment briefs, it became apparent that the parties were unable to agree on factual stipulations. *See, e.g., ECF No. 12-2* (Memorandum in Support of Defendant Medical Mutual of Ohio's Cross Motion for Summary Judgment), at 4 n.1; *ECF No. 13* (Plaintiff's Reply Brief, etc.), at 6. Accordingly, the Court scheduled a teleconference with counsel for June 10, 2009. *ECF No. 9.*

During the June 10, 2009 teleconference, the Court reminded counsel that the filing of summary judgment motions was premised on the parties' ability to agree upon stipulated facts. Since they were unable to do so, the Court informed counsel that it would deny the motions based on the presence of material factual disputes, which the Court memorialized in an order dated June 11, 2009. *ECF No. 14*. The Court shared its opinion that the case should be settled, but that the undersigned could not both preside over a bench trial and mediate the case. *Id*. Thus, the undersigned offered to mediate the case if the parties would consent to the jurisdiction of the assigned Magistrate Judge for trial purposes, should the proposed mediation prove unsuccessful. *Id*. Counsel agreed to discuss this matter with their clients, and to hold a followup teleconference with the Court on June 16, 2009. *Id.*

-3-

During the June 16, 2009 teleconference, MMO's counsel informed the Court that his client did not want to mediate the case. Accordingly, the Court directed counsel to confer and agree on a proposed discovery schedule in preparation for a bench trial. Counsel agreed to file the proposed schedule by June 25, 2009, and a followup teleconference was scheduled for June 30, 2009. *ECF No. 15*.

On June 25, 2009, however, MMO filed a Motion for Order Preventing Discovery and Excluding Trial Testimony, arguing that the case should be decided solely on the administrative record that it submitted to the Court on April 15, 2009. *ECF No. 16*. On the same day, as directed, the parties also filed a Joint Proposed Scheduling Order upon which they agreed in the event the Court denied MMO's Motion for Order Preventing Discovery and Excluding Trial Testimony. *ECF No. 17*.

The June 25 filings were discussed in detail during the June 30, 2009 teleconference – at the end of which the Court concluded that discovery and a trial were unnecessary to decide the dispute. *ECF No. 18*. The Court determined that the dispositive legal issue in the case was "whether the insurance policy in question clearly distinguished between inpatient and residential care in the eyes of a reasonable policyholder and medical provider." *Id*. at 1. As such, the Court directed (1) MMO to file a Supplemental Motion for Summary Judgment no later than 5:00 p.m. on July 17, 2009, (2) Plaintiff to file an Opposition and Supplemental Cross-Motion for Summary Judgment no later than 5:00 p.m. on August 3, 2009, and (3) MMO to file a Reply no later than 5:00 p.m. on August 13, 2009. *Id*. This order effectively reactivated Plaintiff's Motion for Summary Judgment, *ECF No. 11*, and Defendant MMO's Cross-Motion for Summary Judgment, *ECF No. 12*. The Court denied as moot MMO's

Motion for Order Preventing Discovery and Excluding Trial Testimony and noted that the discovery schedule set forth in the order of June 22, 2009 was now moot. *Id*. at 1-2.

On July 17, 2009, MMO filed its Supplemental Memorandum in Support of its Cross-Motion for Summary Judgment. *ECF No. 19*. Therein, MMO argued that it was entitled to judgment in its favor because (1) residential care is not covered by its policy, (2) inpatient care is not covered when its primary purpose is residential treatment for substance abuse, (3) inpatient care is not covered if inpatient care was not medically necessary, and (4) inpatient care is not covered when not pre-certified in writing. MMO noted that Dr. Edward Lukawski, an independent doctor who reviewed the case, issued a three-page decision and "determined that 01-25-2007 and 01-26-2007 meet criteria for medically necessary at acute level of care. The remainder of the stay, through 3-23-2007, is medically necessary at the level of residential treatment." *Id*. at 2 (citing AR0761). MMO further noted that it adopted, as the ultimate decision on Solomon's claim, the opinion of Dr. Lukawski in a letter dated October 11, 2007 – and argued that Solomon could not show that the decision was arbitrary and capricious. *Id*. (citing AR0282-83). MMO also pointed out that the policy, expressly and in bold type, does not cover residential care rendered by a Residential Treatment Facility for insureds with substance abuse problems, and argued that Solomon has failed to meet her burden to show that the Hanley Center is not a Residential Treatment Facility. *Id*. Finally, and most persuasively, MMO argued that the policy expressly provides that all inpatient care for substance abuse services must be approved by MMO prior to admission and that such requests for coverage must be made in writing. *ECF No. 19*, at 5. Because Solomon did not request preapproval in writing and did not receive preapproval, its resolution of her claim was not arbitrary and capricious. *Id*.

-5-

Solomon failed to file an Opposition Brief and Supplemental Cross-Motion for Summary Judgment on August 3, 2009. On August 13, 2009, MMO filed a Supplemental Reply apprising the Court of Solomon's failure to timely file a brief, and asking the Court to grant its Cross-Motion for Summary Judgment, *ECF No. 12*, as unopposed.

On August 20, 2009, after reviewing the record, the Court issued a Memorandum of Opinion and Order granting MMO's motion for summary judgment and denying Plaintiff's cross-motion for summary judgment, along with a judgment entry. (ECF Nos. 21, 22.) Therein, the Court explained that it was granting MMO's motion because:

> (1) MMO's reasons for resolving Solomon's claim appear to have merit and do not appear to be arbitrary and capricious, and (2) the Court interprets Solomon's failure to file a brief in opposition to MMO's Supplemental Memorandum to be her concession to the arguments made therein.

(Id. at 6.) With this, the Court entered judgment in favor of MMO and against Plaintiff, and dismissed the case with prejudice. (Id.) The Court instructed its law clerk to call Plaintiff's attorney, Robert Rutter, Esq., to advise him of the Court's decision on the day the Memorandum of Opinion and Order was issued. The law clerk called Attorney Rutter's office and left a voicemail message advising him of the decision and suggesting that he review it.

On September 2, 2009, MMO filed the pending Motion for Attorneys' Fees and Costs. (ECF No. 23.) On September 3, 2009, the Court instructed the law clerk to call Attorney Rutter and solicit an opposition to this motion. During this call, the law clerk informed Attorney Rutter that a motion for attorney fees had been filed and stated that she was instructed to call him and solicit an opposition brief since he had failed to file an opposition to MMO's summary judgment motion. The law clerk noted that she had left a voicemail message on his answering machine the day the Court's summary judgment ruling was issued, and asked if he had read the

-6-

Court's opinion granting summary judgment to MMO as unopposed. Attorney Rutter stated that he had read the Court's opinion, but that he didn't understand that part of the Court's opinion since he had filed an opposition brief. The law clerk then pulled the docket up on her computer, reviewed the docket, and told Attorney Rutter that there was no record of any such brief on the docket.

On September 8, 2009, Attorney Rutter filed a Motion to File Brief Instanter on behalf of his client, asking for permission to file Solomon's supplemental summary judgment brief asserting that he had prepared and finalized the brief one week prior to its deadline but that, through inadvertence, it had never been filed. (ECF No. 24.)

That same day, Attorney Rutter filed a Motion to Vacate Judgment. (ECF No. 25.) The motion contained Attorney Rutter's supporting affidavit stating that he believed Solomon's brief had been filed on July 27, 2009 (ECF No. 25-1 at ¶ 9), and that he "did not realize" the mistake until September 3, 2009 (Id. ¶ 10). Attorney Rutter argued, citing Sixth Circuit case law, that the Court should vacate its judgment under Fed. R. Civ. P. 60(b)(1) or (6).

On September 9, 2009, the Court issued an Order stating, in pertinent part:

> The Court awarded summary judgment to Defendant on August 20, 2009. The Court's order explicitly and unambiguously stated that summary judgment was granted in part because "the Court interprets Solomon's failure to file a brief in opposition to MMO's Supplemental Memorandum to be her concession to the arguments made therein." *ECF No. 21* at 6. Moreover, on August 13, 2009, Defendant filed a Supplemental Reply in Support of its Cross Motion for Summary Judgment, arguing that Plaintiff "filed no response on August 3" and therefore Defendant's Cross Motion for Summary Judgment "stands unopposed." *ECF No. 20* at 1.
> Plaintiff's pending Motion to Vacate does not adequately explain why counsel only discovered on September 3, 2009, that Plaintiff's opposition brief and Supplemental Cross-Motion had not been filed. Plaintiff received notice that the brief was not filed on August 13, 2009, when Defendant's argued that they should be granted summary judgment because Plaintiff had not opposed its

> Cross motion for Summary Judgment. Plaintiff received additional notice on August 20, 2009, when both the Court's order granting summary judgment in favor of Defendant was issued and the Court provided counsel telephonic notice of the order's issuance.
>
> Accordingly, no later than 4:00 p.m. on September 14, 2009, Plaintiff's counsel shall file a supplemental affidavit explaining what happened between August 13, 2009, and September 3, 2009.

(ECF No. 26, at 1-2.) On September 10, 2009, Attorney Rutter filed a supplemental affidavit. (ECF No. 27.)

## II.

### A. Motion for Attorney Fees

MMO's pending Motion for Attorneys' Fees and Costs asks the Court to enter an Order requiring Plaintiff to pay $27,096.41 for fees and costs it incurred in litigating this matter. (ECF No. 23.) MMO argues that Plaintiff's decision to initiate litigation against MMO was not substantially justified, resulting in significant fees and costs paid by MMO to its attorneys. Plaintiff filed a timely opposition brief to this motion, arguing against such an award because (1) fees under ERISA are generally only awarded to successful claimants (not defendants); (2) Plaintiff pursued this matter in good faith; (3) Plaintiff does not have the financial ability to pay MMO's fees; (4) an award of fees to MMO would likely have a chilling effect on subsequent claimants; and (5) the issues involved in this case were unique, so no common benefit will be derived for other plan administrators.

The Court hereby **DENIES** MMO's Motion for attorney fees for several reasons. There is no evidence that Plaintiff pursued her claim in bad faith. Indeed, the evidence shows that MMO changed its collective mind (and its decisions) several times after numerous reviews of the record; thus providing justification for Plaintiff's lawsuit. Also, Plaintiff's attorney

represented to the Court that Plaintiff went through her entire retirement savings to pay as much of the Hanley Center's bill as she could, and that she continues to makes payments on her bills. Thus, there is reason to believe she does not have the wherewithal to pay MMO's fees and costs as well as the remaining balance on her underlying medical debt, and that the requested reward would serve no real purpose.

### B. Motion to File Brief Instanter

The supplemental briefing schedule was discussed with, and agreed to, by counsel during the June 30, telephone conference. MMO filed its brief on time on July 17, 2009. While Plaintiff's brief was due August 3, 2009, Mr. Rutter did not file it. He asserts in his two affidavits that he prepared it for filing July 27 and intended that it be filed. He did not file his Motion to File Brief Instanter until September 8, more than one month after it was due.

Every attorney understands the importance of deadlines for the fair and orderly management of litigation. On the other hand, even conscientious attorneys sometimes make mistakes and miss deadlines, and the Court is reluctant to penalize a client for her attorney's mistake. Attorney Rutter should have realized something was amiss by August 13, 2009, which was the deadline for MMO's reply brief. When he didn't receive a brief that he had to anticipate would be filed, he should have been alerted to the fact that he was not receiving ECF notification, and taken steps to determine if the problem was on his end or the Court's end. But the Court might be willing to forgive this second instance of negligence had Attorney Rutter moved to file his brief instanter promptly after he positively discovered that the Court had not received the brief in the first instance. It is clear from Attorney Rutter's September 10 Supplemental Affidavit, however, that he received and read the Court's August 20, 2009

Memorandum Opinion and Order on the day it was issued. He acknowledges reading the statement in the Opinion that "I had not responded to MMOH's argument". While he states that he was "confused" by this statement, there was nothing about which to be confused. One of only two things could have happened. Either the opposition brief had never been filed, or it had been filed but the Court (and presumably MMO as well) had somehow overlooked it. Prompt action was required by Attorney Rutter to determine who had made the error. All Attorney Rutter needed to do was to take a quick look at the docket to see if his opposition brief was, in fact, filed. Had he done so, he would have seen that the brief had not been filed, and he could have filed his Motion to File Brief Instanter that day or the next day at the latest. Nearly three weeks passed before Attorney Rutter filed his motion. Accordingly, the Motion to File Brief Instanter is **DENIED**.

### C. Motion to Vacate Judgment

As Plaintiff's Motion to Vacate Judgment is predicated upon the Court receiving and considering the arguments in her opposition brief, the Court's ruling denying the Motion to File Brief Instanter dictates that the Motion to Vacate Judgment must also be **DENIED**.

The Court will state, however, that even had it considered the arguments in Plaintiff's Supplemental Brief in Support of Motion for Summary Judgment, the Court would still have granted summary judgment for MMO. The Plan clearly states, in bold type, that "[r]esidential care rendered by a Residential Treatment Facility is not covered," and Plaintiff has not provided any evidence that the Hanley Center is not a Residential Treatment Facility. Further, Dr. Barbara Krantz, the Hanley Center's Chief of Medical Services, confirmed that Solomon's treatment was residential treatment. While the Plan is certainly not a model of

clarity, and the use of two terms – "residential" and "inpatient" – in the Plan could generate confusion, MMO's decision, based upon Dr. Lukawski's conclusion, is not arbitrary or capricious.  It is in fact based upon a fair reading of the Plan. Further, it is undisputed that the Plan requires that all inpatient care for drug abuse and alcoholism to be approved by MMO prior to admission, and that all requests for pre-approval be in writing.  Solomon did not make a written request for pre-approval of her stay at Hanley Center.  In fact, she tried to circumvent the system by calling the billing department representative with whom she had conversed while employed as a benefits administrator for her previous employer, and this person told her that residential care at Hanley Center would not be covered.  Accordingly, Plaintiff's Motion to Vacate Judgment would be denied, even if the Court were to consider the arguments in the Supplemental Memorandum.

### III.

Based on the foregoing, Defendant, Medical Mutual of Ohio's, Motion for Attorneys' Fees and Costs (**ECF No. 23**) is **DENIED**; Plaintiff's Motion to File Brief Instanter (**ECF No. 24**) is **DENIED**; and Plaintiff's Motion to Vacate Judgment (**ECF No. 25**) is **DENIED**.

**IT IS SO ORDERED.**

*/s/Dan Aaron Polster     September 23, 2009*
**Dan Aaron Polster**
**United States District Judge**